**Slip Op. 14-52**

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ARTISAN MANUFACTURING CORP. AND SHENZEN KEHUAXING INDUSTRIAL LTD.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant. | **Before: Timothy C. Stanceu, Judge** <br><br> **Court No. 13-00169** |

## <u>OPINION AND ORDER</u>

Dated: May 5, 2014

[Remanding a decision of the U.S Department of Commerce assigning an antidumping duty rate based on an adverse inference]

*Daniel L. Porter* and *Ross Bidlingmaier*, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, D.C., for plaintiffs.

*Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, and *Richard P. Schroeder*, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, for defendant. Of counsel on the brief was *Whitney M. Rolig*, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Stanceu, Judge: Plaintiffs Artisan Manufacturing Corporation ("Artisan") and Shenzen

Kehuaxing Industrial Ltd. ("Kehuaxing") contest a determination that the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued upon

concluding an antidumping duty investigation of drawn stainless steel sinks from the People's

Republic of China ("China" or the "PRC"). Plaintiffs claim that Commerce unreasonably

rejected as untimely a submission—specifically, a response to the Department's "quantity and

value," or "Q&V," questionnaire—that Kehuaxing and Artisan filed the day after the due date

and accompanied with a request for a one-day extension.  Plaintiffs seek reversal of the

Department's decision, made in response to the untimely filing, to assign Kehuaxing a margin at

the 76.53% rate selected by Commerce for application to producer/exporters that had not shown

independence from the government of China.  The court holds that Commerce abused its

discretion in assigning Kehuaxing this rate as a sanction for missing the filing date for the

response to the Q&V questionnaire.

## I. BACKGROUND

Plaintiffs contest the decision (the "Final Determination") in *Drawn Stainless Steel Sinks*

*From the People's Republic of China: Investigation, Final Determination*, 78 Fed. Reg. 13,019

(Int'l Trade Admin. Feb. 26, 2013) ("*Final Determination*").  Based on a period of investigation

of July 1, 2011 through December 11, 2011, Commerce found in the Final Determination that

drawn stainless steel sinks from China are being, or are likely to be, sold in the United States at

less than fair value.  *Id.* at 13,019.

Plaintiff Kehuaxing is a Chinese producer and exporter of drawn stainless steel sinks and

plaintiff Artisan is a U.S. importer of Kehuaxing's products.  Compl. ¶ 3 (May 1, 2013), ECF

No. 6.  Both plaintiffs participated as parties in the antidumping duty investigation.  *Id.*

### A.  General Background on the Final Determination

Commerce selected for individual investigation as "mandatory respondents" two Chinese

producer/exporters, Guangdong Dongyuan Kitchenware Industrial Co., Ltd. ("Dongyuan") and a

combined entity Commerce identified as consisting of Zhongshan Superte Kitchenware Co., Ltd.

and a related invoicing company, Foshan Zhaoshun Trade Co., Ltd. (collectively referred to as

"Superte/Zhaoshun").  *Final Determination*, 78 Fed. Reg. at 13,019 n.2.  Commerce assigned

weighted average dumping margins of 27.14% to Dongyuan and 39.87% to Superte/Zhaoshun,

respectively.  *Id.* at 13,023.  Following its practice for antidumping duty ("AD") investigations

involving nonmarket economy ("NME") countries, Commerce assigned a simple average of

those two margins, 33.51%, as an antidumping duty rate to nineteen non-investigated

producer/exporters that, like the mandatory respondents, had demonstrated "both *de jure* and *de

facto* absence" of Chinese government control and had cooperated in the investigation by

responding to the Department's requests for information.  *Id.* at 13,021, 13,023.  Commerce

referred to the nineteen producer/exporters and the mandatory respondents collectively as the

"Separate Rate Companies."  *Id*. at 13,020.

       In the Final Determination, Commerce stated that "[b]ecause the Department begins with

the presumption that all companies within an NME country are subject to government control,

and because only the mandatory respondents and certain Separate Rate Applicants have

overcome that presumption, the Department is applying a single AD rate to all other exporters of

subject merchandise from the PRC."  *Id.* at 13,022.  In selecting this rate, Commerce invoked its

authority to apply "adverse facts available" ("AFA") under section 776(b) of the Tariff Act of

1930 ("Tariff Act"), 19 U.S.C. § 1677e(b), according to which Commerce, in selecting from

among the "facts otherwise available," may use an inference adverse to the interests of a party

that has failed to cooperate by not acting to the best of its ability in responding to a request for

information.[1] *Final Determination*, 78 Fed. Reg. at 13,022.  "In determining a rate for AFA, the

Department's practice is to select a rate that is sufficiently adverse 'as to effectuate the purpose

---

[1] All statutory citations herein are to the 2006 edition of the United States Code and all
citations to regulations are to the 2010 edition of the Code of Federal Regulations.

of the adverse facts available rule to induce respondents to provide the Department with

complete and accurate information in a timely manner.'" *Id.* (citation omitted).

Commerce selected as its AFA rate "the highest petition AD margin," 76.53%, which it

designated the "PRC-wide rate" for application to all Chinese producer/exporters Commerce

determined not to have established independence from control of the government of China.  *Id.*

Commerce took this action based on its findings that "the Department has found that these PRC

exporters and/or producers are part of the PRC-wide entity," that "the PRC-wide entity did not

provide the Department with requested information," and that "the PRC-wide entity has failed to

cooperate to the best of its ability."  *Id.*  Commerce listed Kehuaxing among the companies

subject to the 76.53% PRC-wide rate.  *Id.*

B.  Circumstances of the Department's Assigning the 76.53% PRC-Wide Rate to Kehuaxing

The notice initiating the antidumping duty investigation ("Initiation Notice") announced

that "[t]he Department will request quantity and value information from all known exporters and

producers identified with complete contact information in the Petition."  *Drawn Stainless Steel*

*Sinks from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 77 Fed.

Reg. 18,207, 18,210 (Int'l Trade Admin. Mar. 27, 2012) ("*Initiation Notice*").  Commerce

explained in the Initiation Notice that "[t]he quantity and value data received from Chinese

exporters/producers will be used as the basis for selecting the mandatory respondents."  *Id.*  The

notice instructed that "[t]he Department requires that the respondents submit a response to both

the quantity and value questionnaire and the separate-rate application by the respective

deadlines, as discussed below and in the Separate Rate section, in order to receive consideration

for separate-rate status," *id.*, and specified that "[t]he quantity and value questionnaire must be

submitted by all Chinese exporters/producers no later than April 11, 2012, 21 days after the

signature date of this **Federal Register** notice," *id.* (emphasis in original).  The Initiation Notice

announced that the separate-rate application (to which the notice also referred as a "separate-rate

status application") would be available on a Department website as of the date of publication of

the Initiation Notice.  *Id.*

Commerce sent Kehuaxing a Q&V questionnaire accompanied by a cover letter dated

March 22, 2012.  *See Excerpts of Q&V Questionnaire & Instructions* ("*Q&V Questionnaire*"), *in*

Resp't Pls.' App. to their Mot. for J. on the Agency R., tab 8 (Sept. 18, 2013), ECF No. 18

("Pls.' App.").  Plaintiffs submitted their response to the Q&V questionnaire on April 12, 2012,

the day following the due date.  *Artisan & Kehuaxing's Q&V Submission* 1 ("*Artisan &*

*Kehuaxing's Q&V Submission*"), *in* Pls.' App., tab 2.  In a cover letter accompanying their

questionnaire response, Artisan and Kehuaxing acknowledged the April 11, 2012 due date and

explained that "[d]ue to an inadvertent error, this response is being filed before 9:00 a.m. on

April 12, 2012, the day after the deadline."  *Id.* at 2.  The letter included the following request:

> We respectfully request that the Department accept the quantity and value
> questionnaire as filed.  While recognizing that it has been filed after the deadline,
> the response is being filed before business hours on the following day, meaning
> that no additional burden or undue delay is being imposed on the Department.
> We regret the inadvertent error and urge the Department to include Artisan
> Manufacturing Corporation and Shenzen Kehuaxing Industrial Ltd. in the quantity
> and value analysis.

*Id.*  In a letter dated April 20, 2012, Commerce responded that "[a]fter considering Artisan's and

Kehuaxing's explanation, we find that it would not be appropriate to accept this late filing

because the deadline for filing a Q&V with the Department had already passed." [2]  *Letter*

---

[2] In a letter to the court dated April 17, 2014, defendant requested that the court "not
consider Tab 2 of plaintiffs' public and confidential appendices," *i.e.*, Artisan Manufacturing
Corporation and Shenzen Kehuaxing Industrial Ltd.'s quantity and value ("Q&V") submission,
on the ground that the U.S. Department of Commerce ("Commerce" or the "Department")
(continued…)

*Rejecting Artisan & Kehuaxing's Submission* 1 (Admin.R.Doc. No. 92).  The letter further

notified Artisan and Kehuaxing that "[n]o copy of the document will remain on the record

because, pursuant to 19 CFR 351.104(a)(2)(iii), the official record of the proceeding should not

include any document that the Department returns to the submitter as untimely filed."  *Id.*

Commerce later notified Kehuaxing that it also was rejecting Kehuaxing's timely-filed

separate-rate application.  As the reason for this rejection, Commerce explained that "[b]ecause a

timely response to the Q&V Questionnaire is necessary to be considered for receipt of a separate

rate, we have not accepted Kehuaxing's separate rate questionnaire response," adding that "[w]e

have removed it from the record and will not rely upon it in our investigation."  *Letter Rejecting*

*Kehuaxing's Separate Rate Appl.* 2 (June 6, 2012) (Admin.R.Doc. No. 186).

---

(continued…)
rejected the documents of Tab 2 such that the documents of Tab 2 are "not part of the administrative record."  *See* Def.'s Notice Regarding the Agency R. Docs. Filed Pursuant to Ct. Req. 2, ECF No. 32.  Commerce, however, improperly excluded from the record the cover letter accompanying the Q&V submission, which plaintiffs included under Tab 2 of their appendix to their Motion for Judgment on the Agency Record.  This letter was submitted to Commerce to request an extension of time and in this regard appears to be correspondence that Commerce should have placed on the record.  *See* 19 C.F.R. § 351.104 ("The Secretary will include in the official record all factual information, written argument, or other material developed by, presented to, or obtained by the Secretary during the course of a proceeding that pertains to the proceeding.").  Moreover, the record discloses that Commerce considered the explanation provided in the cover letter when reaching a final determination, *Letter Rejecting Artisan & Kehuaxing's Submission* 1 (Apr. 20, 2012) (Admin.R.Doc. No. 92), and therefore Commerce was required by the rules of this Court to include this letter in the record filed with the court.  *See* USCIT R. 73.2(a)(1)-(2) ("[T]he administering authority . . . must file with the clerk of the court . . . [a] copy of all information presented to or obtained by the administering authority . . . during the course of the administrative proceedings . . . [and a] copy of the determination and the facts and conclusions of law on which such determination was based . . . .").  Commerce made no finding that the cover letter was untimely or otherwise properly excluded from the record, finding only that the Q&V questionnaire response was untimely.  Because Commerce improperly excluded the letter requesting an extension of time, the court finds it appropriate to consider the letter.

In a letter dated June 11, 2012, Kehuaxing requested that Commerce reconsider the decision to reject Kehuaxing's separate-rate application. *Req. to Reconsider Rejection of the Separate Rate Appl. of Kehuaxing* 2 (Admin.R.Doc. No. 191). The letter, which was accompanied by an affidavit by plaintiffs' counsel, provides additional details on the circumstances surrounding the late filing of the Q&V questionnaire. *Id.* at Bidlingmaier Aff. In brief summary, the explanation in the letter is that counsel received by email the final version of Kehuaxing's Q&V response on April 10, 2012, the day prior to the due date, but "[d]ue to an inadvertent lapse, counsel did not file the response by the 5 p.m. deadline on April 11." *Id.* at 3. The letter adds that "[u]pon realizing during the evening of April 11 that Kehuaxing's response had not been filed, counsel arrived to the office at 7:00 a.m. on April 12 to finalize preparation of the response and to ensure filing at the earliest possible time" and "filed the final business proprietary and public versions of the quantity and value response before 9:00 a.m. on April 12." *Id.* An Issues and Decision Memorandum ("Decision Memorandum") incorporated by reference in the Final Determination indicates that Commerce denied this request for reconsideration. *See Issues & Decision Mem.*, A-570-983, at 28-32 (Feb. 19, 2013) (Admin.R.Doc. No. 417), *available at* http://enforcement.trade.gov/frn/summary/PRC/2013-04379-1.pdf (last visited Apr. 29, 2014) ("*Decision Mem.*").

In the Decision Memorandum, Commerce provided details on the decision it had made earlier in the investigation to reject as untimely Kehuaxing's Q&V response. *Id.* Commerce stated that Kehuaxing filed its response to the Q&V questionnaire on April 12, 2012, one day after the due date and that "[o]n April 20, 2012, the Department rejected Kehuaxing's Q&V response, consistent with 19 CFR 351.301(c)(2), because the filing was untimely." *Id.* at 29. Commerce also noted that it had "rejected and removed from the record," Kehuaxing's

separate-rate application, "in accordance with 19 CFR 351.302(d) and 19 CFR 351.104(a)(2),

because Kehuaxing had not timely filed a Q&V response." *Id.* at 30 n.116.  Responding in the

Decision Memorandum to a case brief plaintiffs filed during the investigation, Commerce

"continue[d] to find Kehuaxing's Q&V response untimely," *id.* at 29, and concluded "that

Kehuaxing is not eligible for a separate rate," *id.* at 32.

## C.  Initiation of this Action

Plaintiffs commenced this action by filing a summons and complaint on May 1, 2013.

Summons 1, ECF No. 1; Compl. 1.  They filed their Motion for Judgment on the Agency Record

on September 16, 2013.  Resp't Pls.' R. 56.2 Mot. for J. on the Agency R. 1 (Sept. 16, 2013),

ECF No. 15 ("Pls.' Mot.").  Defendant filed its response on December 18, 2013, Def.'s Resp. to

Pls.' R. 56.2 Mot. for J. on the Agency R. 1, ECF No. 24 ("Def.'s Resp."), and plaintiffs replied

on February 14, 2014, Pls.' Reply Br. in Support of their Mot. for J. on the Agency R. 1,

ECF No. 27.  The administrative record was filed in part on June 10, 2013, ECF No. 9, and in

part on April 9, 2014, ECF No. 31.

## II.  DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980,

28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under

section 516A of the Tariff Act, 19 U.S.C. § 1516a, including an action contesting the final

determination Commerce issues to conclude an antidumping duty investigation.  In reviewing the

Final Determination, the court "shall hold unlawful any determination, finding, or conclusion

found . . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law. . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

Plaintiffs' claim, in essence, is that Commerce abused its discretion in denying Kehuaxing's request to accept the late-filed Q&V questionnaire and in denying separate-rate status to Kehuaxing as a result of that late filing, thereby subjecting Kehuaxing to the 76.53% PRC-wide rate.  As plaintiffs argue in their brief, "Commerce's decision to reject Plaintiff's separate rate application and assign Plaintiffs the PRC-wide entity antidumping margin because of Plaintiffs' untimely submission of the quantity and value questionnaire response is an abuse of Commerce's discretion under the law."  Resp't Pls.' Br. in Supp. of their Mot. for J. on the Agency R. 13 (Sept. 16, 2013), ECF No. 15 ("Pls.' Mem.").

Plaintiffs raise several arguments in support of their claim.  They argue that in denying the one-day filing extension, Commerce unreasonably and unlawfully applied a "bright-line rule" under which no extension may be granted regardless of the circumstances. Pls.' Mem. 8-18. Plaintiffs also argue that applying the PRC-wide rate to Kehauxing was contrary to section 782(d) of the Tariff Act, 19 U.S.C. § 1677m(d).  According to plaintiffs, Commerce was not permitted in this circumstance to use an adverse inference under 19 U.S.C. § 1677e(b) without first affording Kehuaxing an opportunity, as required by 19 U.S.C. § 1677m(d), to remedy the deficiency caused by the late filing.  *Id.* at 19-22.  Further, plaintiffs argue that Commerce exceeded its discretion in applying adverse inferences not only to the respondent selection determination but also to the separate rate determination, even though the separate-rate application was timely filed and not found to be deficient.  *Id.* at 22.

Defendant counters that "Commerce reasonably declined to grant Kehuaxing a separate rate because Kehuaxing failed to file a timely quantity and value response, a prerequisite for obtaining a separate rate," and that Commerce "reasonably exercised its discretion when it declined to grant plaintiffs the requested extension."  Def.'s Resp. 6.  Defendant added that

"[t]his determination reflected a reasonable evaluation of the facts of the case, Commerce's

interests in enforcing its regulations and deadlines, and fairness to the other parties to the

administrative proceeding." *Id.* at 5.  Defendant characterizes as reasonable a Departmental

policy of granting all parties an extension to file requested information when only one party

requests an extension, explaining that "[w]here a party files for an extension of time after the

deadline already has passed, it effectively deprives Commerce of the ability to make the

extension meaningfully apply to all parties." *Id.* at 7.  Disagreeing with plaintiffs that Commerce

applied a "bright-line rule," defendant argues that Commerce reasonably determined that the

requested extension was not justified by the particular circumstances, in which "plaintiffs merely

cited an inadvertent error (rather than, for example, a technical failure) as the reason for their

untimely filing" and did not request the extension prior to the expiration of the time period. *Id.*

at 10.

On the issue of whether Commerce acted contrary to 19 U.S.C. § 1677m(d) in applying

the PRC-wide rate as an adverse inference, defendant argues that the court should refuse to hear

plaintiffs' argument because plaintiffs failed to exhaust their administrative remedies when they

failed to raise the argument in the administrative case brief they filed during the investigation.

*Id.* at 16-19.  Defendant cites, *id.* at 17, the Department's regulation, 19 C.F.R. § 351.309(c)(2),

which provides that "the case brief must present all arguments that continue in the submitter's

view to be relevant to the Secretary's final determination . . . , including any arguments presented

before the date of publication of the preliminary determination . . . ."

A.  Commerce Abused its Discretion in Assigning Kehuaxing the PRC-Wide Rate in Response
to the Late Filing of the Response to the Q&V Questionnaire

According to the Initiation Notice, "[t]he Department requires that the respondents

submit a response to both the quantity and value questionnaire and the separate-rate application

by the respective deadlines . . . in order to receive consideration for separate-rate status."

*Initiation Notice*, 77 Fed. Reg. at 18,210.  The requirement to which the Initiation Notice refers

is not found in the antidumping duty statute.  Nor is it found in the Department's regulations,

which do not provide that Commerce may apply to a party the "PRC-wide" rate as a sanction for

the late filing of a response to a questionnaire seeking Q&V information on a party's exports.

Therefore, the only authority upon which Commerce could have relied for assigning the

PRC-wide rate to Kehuaxing was section 776 of the Tariff Act, 19 U.S.C. § 1677e.  Commerce

itself acknowledged in the Final Determination that it relied on its authority under section 776(b)

of the Tariff Act, 19 U.S.C. § 1677e(b), in applying the PRC-wide rate to producer/exporters that

had not demonstrated independence from control of the government of China.[3]  This case

presents the question of whether Commerce properly exercised its authority under 19 U.S.C.

§ 1677e in deciding to include Kehuaxing among that group of exporters.

According to subsection (b) of 19 U.S.C. § 1677e, where Commerce "finds that an

interested party has failed to cooperate by not acting to the best of its ability to comply with a

request for information from the administering authority [*i.e.*, Commerce] . . . , the administering

authority . . . in reaching the applicable determination under this subtitle, may use an inference

---

[3] As stated in the decision contested in this case (the "Final Determination"), "[t]he Department determines that, because the PRC-wide entity did not respond to our request for information, the PRC-wide entity has failed to cooperate to the best of its ability," adding that "[t]herefore, pursuant to section 776(b) of the Act [19 U.S.C. § 1677e(b)], the Department finds that, in selecting from the [facts available], an adverse inference is appropriate for the PRC-wide entity." *Drawn Stainless Steel Sinks From the People's Republic of China: Investigation, Final Determination*, 78 Fed. Reg. 13,019, 13,022 (Int'l Trade Admin. Feb. 26, 2013) ("*Final Determination*").  The Final Determination further states that "[b]ecause the Department begins with the presumption that all companies within an [nonmarket economy] country are subject to government control, and because only the mandatory respondents and certain Separate Rate Applicants have overcome that presumption, the Department is applying a single [antidumping] rate to all other exporters of subject merchandise from the PRC" and that "[s]uch companies have not demonstrated entitlement to a separate rate." *Id.*

that is adverse to the interests of that party in selecting from among the facts otherwise

available." 19 U.S.C. § 1677e(b).  The words "the facts otherwise available" refer to a term used

in the preceding subsection, § 1677e(a).  As provided in subsection (a), Commerce, in certain

circumstances, "shall, subject to section 1677m(d) of this title, use the facts otherwise available

in reaching the applicable determination under this subtitle."  Among the circumstances is one

specified in § 1677e(a)(2)(B), under which "an interested party or any other person . . . fails to

provide such information by the deadlines for submission of the information . . . subject to

subsections (c)(1) and (e) of section 1677m of this title . . . ."[4]  *Id.* § 1677e(a)(2)(B).  The term

"such information" as used in § 1677e(a)(2)(B) is an apparent reference to a term used in the

previous paragraph, "information that has been requested by the administering

authority . . . under this subtitle."  *Id.* § 1677e(a)(2)(A).

The information in Kehuaxing's response to the Q&V questionnaire was not filed by the

deadline for submission and, therefore, was information for which Commerce would use "facts

otherwise available" according to 19 U.S.C. § 1677e(a).  This is not to say that Commerce lacked

the discretion under § 1677e(a) to extend the deadline for submission of the Q&V response, even

in a situation in which the extension request was filed after the deadline had passed (in this case,

immediately after the deadline had passed).  To carry out its responsibilities, Commerce

necessarily must exercise discretion in setting, extending, and enforcing deadlines for the

submission of requested information.  Where Commerce permissibly exercises that discretion,

---

[4] "Subsections (c)(1) and (e) of section 1677m" are not applicable here, as 19 U.S.C. § 1677m(c)(1) applies when an interested party notifies Commerce that it is unable to submit requested information in the requested form and manner and 19 U.S.C. § 1677m(e) directs Commerce to consider submitted information necessary to a determination even if the interested party does not submit the information in the form and manner requested, provided certain conditions are met, among which is that "the information is submitted by the deadline established for its submission," *id.* § 1677m(e)(1).

Commerce may find that a party that failed to comply timely with an information request "failed

to cooperate by not acting to the best of its ability to comply with a request for information"

within the meaning of 19 U.S.C. § 1677e(b).  As the U.S. Court of Appeals for the Federal

Circuit ("Court of Appeals") has stated, "the statutory mandate that a respondent act to 'the best

of its ability' requires the respondent to do the maximum it is able to do."  *Nippon Steel Corp. v.*

*United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  The Department's discretion to "use an

inference that is adverse to the interests of that party in selecting from among the facts otherwise

available" applies when a party fails to meet this standard.  19 U.S.C. § 1677e(b).

Plaintiffs argue before the court that "Commerce never identified any deficiency with the

separate rate application itself, yet still applied adverse inferences to the information contained in

this submission that Commerce never found to be deficient."[5]  Pls.' Mem. 22.  Accordingly,

plaintiffs argue, "Commerce exceeded its discretion when it applied adverse inferences to the

separate rate determination, rather than the respondent selection determination alone."  *Id.*

Plaintiffs' argument is at least plausible.  Arguably, the information comprising the separate-rate

application could not lawfully be excluded from the record as an "adverse inference" under

19 U.S.C. § 1677e(b) because the separate-rate application was not missing from the record,

except in the sense that Commerce intentionally excluded it on the ground that the Q&V

response was untimely filed.  The separate-rate application was not untimely submitted and was

not found by Commerce to be otherwise disqualified from consideration according to 19 U.S.C.

§ 1677e(a).  The crux of this argument is that § 1677e does not permit Commerce, under any

_____

[5] Kehuaxing raised this objection in the case brief it filed with Commerce during the
investigation.  *Case Br. of Keahuxing* 11 (Dec. 13, 2012) (Admin.R.Doc. No. 399) ("The
separate rate application, not the quantity and value response, requires analysis by the
Department to determine if an exporter is eligible for a separate rate.  The separate rate
application is the determinative document.").

circumstance, to reject a timely-filed separate-rate application, and substitute "the facts otherwise

available" for the information comprising the separate-rate application, where a party was late in

satisfying a different request for information.  Supporting this argument are the Department's

statements that the two sets of information are collected for different purposes.  Commerce uses

the separate-rate application in identifying the "Separate Rate Companies," which are those

companies that have demonstrated "both *de jure* and *de facto* absence of government control

with respect to each company's respective exports of the merchandise under investigation."

*Final Determination*, 78 Fed. Reg. at 13,021.  In comparison, as specified in the Initiation

Notice, "[t]he quantity and value data received from Chinese exporters/producers will be used as

the basis for selecting the mandatory respondents."  *Initiation Notice*, 77 Fed. Reg. at 18,210.  As

Commerce clarified in the cover letter to the Q&V questionnaire, *Q&V Questionnaire* 1, *in* Pls.'

App., tab 8, Commerce selects mandatory respondents under section 777A(c)(2) of the Tariff

Act, 19 U.S.C. § 1677f-1(c)(2), according to which Commerce "may determine the weighted

average dumping margins for a reasonable number of exporters or producers" where "it is not

practicable to make individual weighted average dumping margin determinations . . . because of

the large number of exporters or producers involved in the investigation . . . ."

On the other hand, it also could be argued that Commerce must have some means of

ensuring that it will receive the Q&V information that it needs to select mandatory respondents.

Under such an argument, Commerce must be permitted to attach some adverse consequence to a

party's failure to file Q&V information.  An extension of the argument would hold that

Commerce must be allowed to exercise its discretion to use an adverse inference so that it may

conduct an investigation in an orderly way and within time restraints.

Because this case can be decided on a narrower ground, the court finds it unnecessary to

decide, at least at this time, the broad question of the lawfulness of the Department's requirement

that a party timely file a response to the Q&V questionnaire to be eligible for a separate rate.

The court considers the issue presented by this case to be whether Commerce, *in the particular*

*circumstances of this investigation*, abused its discretion under 19 U.S.C. § 1677e(b) and its

concomitant discretion when setting, extending, and enforcing its deadline for the submission of

the Q&V response, in rejecting the Q&V response and on that basis assigning Kehuaxing the

76.53% rate as an adverse inference.  As the Court of Appeals has opined, "the purpose of

section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose *punitive*,

aberrational, or uncorroborated margins."  *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v.*

*United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("*De Cecco*") (emphasis added).

In *Gallant Ocean (Thailand) Co., Ltd. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010)

("*Gallant Ocean*"), the Court of Appeals, as it did in *De Cecco*, rejected the adverse-inference-

based rate Commerce assigned to a respondent, concluding that any such rate "'must be a

*reasonably accurate estimate* of the respondent's actual rate, albeit with some built-in increase

intended as a deterrent to noncompliance.'"  *Id.* at 1323 (quoting *De Cecco*, 216 F.3d at 1032

and adding emphasis).  Like this case, *Gallant Ocean* involved the Department's use of an

adverse inference against a respondent exporter stemming from the requirement to submit a

response to a Q&V questionnaire.[6]  *Gallant Ocean* is distinguishable from this case in that the

---

[6] In *Gallant Ocean (Thailand) Co., Ltd. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010),
the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") did not discuss the issue
plaintiffs raise in this case as to whether 19 U.S.C. § 1677e allows Commerce to reject a
separate-rate application based on a producer/exporter's failure to cooperate in responding to a
questionnaire seeking Q&V information.  As discussed previously in this Opinion and Order, the
(continued…)

respondent in *Gallant Ocean* failed to respond to the Department's first request for the Q&V

information, after which Commerce sent another request for the information the following month

that also was met with no response.  *Id.* at 1322.

In this case, Commerce set forth its reasoning in the Decision Memorandum, noting that

"[a]ll firms participating in this investigation were on notice that Q&V responses must be

submitted no later than April 11, 2012."  *Decision Mem.* 29.  Commerce gave two reasons for

denying the extension.  "Adherence to the Department's administrative deadlines is necessary for

the Department to provide all interested parties with a reasonable timeframe in which to submit

information and to complete the investigation within the statutory deadline specified in

section 751(a)(3)(A) of the Act, and importantly, to assure impartiality in its procedures."[7]  *Id.*

Concerning the question of "impartiality in its procedures," the Decision Memorandum

provided the following explanation:

> Further, and importantly, in this case, consideration must be given to the
> possibility of manipulation of the record and inequity among other interested
> parties.  A party filing an untimely Q&V response has the opportunity to review
> the timely filed Q&V responses from other interested parties and amend its own
> Q&V response based on this information; such manipulation would allow it to
> report just enough quantity to qualify as a mandatory respondent, or just little
> enough not to qualify.  Affording an opportunity for such action would seriously
> jeopardize the integrity of the record.  Indeed, the possibility of manipulation is
> one reason why the Department regularly makes extensions for information from

_____

(continued…)

court does not consider it necessary to resolve this issue in order to adjudicate the dispute before
the court.

[7] The Department's citation to section 751(a)(3)(A) of the Tariff Act of 1930 ("Tariff
Act"), 19 U.S.C. § 1675(a)(3)(A), was erroneous.  That provision establishes statutory time
frames for completion of administrative reviews of antidumping duty orders, not antidumping
duty investigations.  The pertinent cite would have been section 733(b) of the Tariff Act,
19 U.S.C. § 1673b(b)(1) (preliminary determination), and section 735(a) of the Tariff Act,
19 U.S.C. § 1673d(a) (final determination).

all parties, applicable to all parties, even when only one party requests the
extension.

*Id.* at 30.

Below, the court considers the various circumstances surrounding the Department's
decision to reject the Q&V response and assign Kehuaxing the PRC-wide, 76.53% rate as an
adverse inference for the late filing of the Q&V response, including the reasons the Department
offered. The circumstances cause the court to conclude that Commerce abused its discretion in
reaching its decision.

### 1. Acceptance of the Late Filing of the Q&V Response Would Have Been Inconsequential to the Department's Conducting of the Investigation

The first reason Commerce gave for its decision was the need to complete the
investigation within the statutory deadline. *Decision Mem.* 29. On the record evidence, this was
not a valid reason. According to that evidence, Kehuaxing's Q&V information was unavailable
to Commerce only between the 5:00 p.m. close of business on the due date, April 11, 2012, and a
time at or near the beginning of the next business day. *Req. to Reconsider Rejection of the
Separate Rate Appl. of Kehuaxing*, Bidlingmaier Aff. Such a brief period could not have delayed
the investigation in any meaningful way. Nor is it apparent from the record how acceptance of
the filing could have interfered in any other way with the Department's ability to conduct the
investigation.

The second rationale Commerce offered, a need "to assure impartiality in its procedures,"
*id.*, is also unconvincing as a reason for the Department's decision in this case. The record does
not contain evidence to support a finding that Kehuaxing would have gained, or could have
gained, an unfair advantage were Commerce to accept the late submission. Commerce reasoned
that "consideration must be given to the possibility of manipulation of the record," raising a

concern that "[a] party filing an untimely Q&V response has the opportunity to review the timely

filed Q&V responses from other interested parties and amend its own Q&V response" so as to

falsely qualify, or falsely not qualify, as a mandatory respondent based on export volume.  *Id.*

at 30.  Here, Commerce did not explain whether, or why, specific record evidence in this case

gave it a reason to conclude that the Q&V data Kehuaxing attempted to submit had been, or even

was likely to have been, compromised by "manipulation," by which term Commerce meant

deliberate falsification of export data.  Commerce nevertheless concluded that "Kehuaxing (or a

similarly situated party) could gain an unfair advantage over the other parties if the Department

accepted its submission."  *Id.* at 31.  Absent evidentiary support in the record of the

investigation, this conclusion is unfounded.

   The record contained evidence, comprised of the certified representations of Kehuaxing's

counsel, that the cause of Kehuaxing's failure to meet the 5:00 p.m. filing deadline on

April 11, 2012 was counsel's neglect.  *Req. to Reconsider Rejection of the Separate Rate Appl. of*

*Kehuaxing*, Bidlingmaier Aff.  The administrative record contained no evidence to the contrary

and, therefore, lacked evidence by which Commerce could conclude that the representations of

counsel were not truthful.  Despite the absence of supporting evidence, Commerce impliedly

presumed that rejection of the Q&V statement was necessary because Kehuaxing, or an exporter

in Kehuaxing's situation, otherwise would be submitting, intentionally and criminally, false

information to Commerce for use in the investigation.[8]

   Because of the proprietary nature of Q&V information, the Department's premise that

acceptance of Kehuaxing's late Q&V submission could allow Kehuaxing to gain an unfair

---

   [8] *See, e.g.*, 18 U.S.C. § 1001 (generally imposing criminal liability for a certified false
statement made to a government entity).

advantage and jeopardize the integrity of the record is also a supposition that counsel for

plaintiffs could conspire with plaintiffs in the unlawful submission of false information and also

violate the administrative protective order that was in effect during the investigation.  In this

regard, plaintiffs point to record evidence establishing that plaintiffs did not have access to the

Q&V responses of the other respondents as of the April 12, 2012 date on which their counsel

filed the Q&V response and that counsel in fact did not obtain access, under the administrative

protective order, to the business proprietary information of other respondents until May 18, 2012.

Pls.' Mem. 18 (citing *Entry of Appearance & APO Appl. for Curtis, Mallet-Prevost, Colt &*

*Mosle LLP* (May 18, 2012) (Admin.R.Doc. No. 128).  In its response to plaintiff's Rule 56.2

motion, defendant does not address this record evidence yet still argues that "Commerce's

explanation demonstrates why it reasonably determined that it would not extend the deadline for

plaintiffs' to file their quantity and value response" and that "Commerce's concern is especially

significant in cases such as this, in which a party requests an extension *after* the deadline has

expired because, by definition, the other respondents would already have submitted their

responses."  Def.'s Resp. 11-12 (emphasis in original).

Defendant qualifies its argument by stating that it is not suggesting that plaintiffs

intended to, or did, falsify the Q&V response and pointing out that Commerce never made a

finding to that effect.  *Id*. at 11.  "Thus, plaintiffs' entire argument that it did not, in fact, engage

in manipulation misses the point."  *Id.* at 15.  According to defendant, "Commerce's generalized

concern about manipulation" provides "a valid basis" to support the Department's decision.  *Id.*

But defendant also argues, somewhat paradoxically, that "[i]t was not the imposition of a

bright-line rule, as plaintiffs suggest," *id.* at 9 (citing Pls.' Mem. 8), adding that "[r]ather,

Commerce's decision reflected its reasonable evaluation of the totality of the circumstances of

the particular matter under consideration," *id.*  Defendant views as critical among the circumstances that "plaintiffs merely cited an inadvertent error (rather than, for example, a technical failure) as the reason for their untimely filing" and "plaintiffs' failure to request an extension of time before the deadline expired." *Id.* at 10.  These two circumstances are unrelated to concerns Commerce expressed regarding the need to conduct a timely investigation and the policy goal of avoiding "manipulation" that "would seriously jeopardize the integrity of the record." *Decision Mem.* 30.

Attempting to distinguish this case from the facts of past judicial decisions, the Decision Memorandum also concluded that "fairness to all of the respondents who submitted Q&V responses on time requires that we reject the late filing of Kehuaxing." *Id.* at 31.  In the context of a desire to ensure fairness, the Decision Memorandum concluded that rejecting Kehuaxing's submission was appropriate due to the Department's policy of allowing all submitters to benefit from any extension it grants. *Id.* at 30-31.  These conclusions have little relevance in this case, in which the extension sought was approximately sixteen hours long, encompassed mainly non-business hours, and, according to the only record evidence, was sought because of a due date that would have been met but for the inadvertence of counsel.  The record does not show that any other exporter/producer requested, or could have benefited from, an extension of so short a duration.

In summary, the Department's decision to reject Kehuaxing's Q&V filing was based on certain conclusions that find no support in the record evidence.  Considered as a whole, the record does not support a conclusion or inference that the brief delay in the availability of the Q&V questionnaire response, had that response been accepted for the record, would have had any of the adverse consequences for the investigation that Commerce identified as reasons for its

decision.  Specifically, the record did not support a finding that acceptance of the submission would result either in a delay of the investigation or the possibility of an intentionally false Q&V response by Kehuaxing, or by any other party, that would "seriously jeopardize the integrity of the record." *Id.* at 30.  Because the time extension sought was so short, the record does not support a conclusion that accepting the submission would have been unfair to the other parties to the investigation.

### 2.  The Consequence of an Unexcused Late Filing Was Particularly Severe

Although the delay in the Department's receiving Kehuaxing's Q&V response would have been inconsequential, the same cannot be said for the result Commerce brought about in this case.  The consequence Commerce attached to an unexcused late filing was particularly severe: the subjecting of Kehauxing to the PRC-wide rate, which is based on an adverse inference and in this case was more than twice as high as the rate assigned to cooperating, non-investigated exporters. *Final Determination*, 78 Fed. Reg. at 13,023.  In the circumstances of this case, Commerce attached a consequence that was grossly disproportionate to the mistake that was made.  The record evidence reveals that the mistake was a relatively minor one that resulted in a delay in the availability of the Q&V information that lasted only from the end of one business day to approximately the beginning of the next one.  The record evidence also demonstrates that the mistake was committed innocently and inadvertently by plaintiffs' counsel. As defendant's argument concedes, Commerce made no findings to the contrary. *See* Def.'s Resp. 11.

### 3.  Commerce Was Ambiguous in Communicating its Policy on Time Extensions

The cover letter Commerce attached to the Q&V questionnaire connotes a policy as to extensions that is more lenient than that expressed in the Decision Memorandum.  The cover

letter informed recipients that the due date for responses was April 11, 2012 and referred to the

issue of extensions of the due date in only one underlined sentence, which read as follows:

"Please note that, due to time constraints in this investigation, the Department will be limited in

its ability to extend the deadline for the response to the attached Quantity and Value ("Q&V")

Questionnaire."  *Q&V Questionnaire* 1, *in* Pls.' App., tab 8 (emphasis in original).  This sentence

gives the impression that the Department's policy on extensions of the filing date for the Q&V

response is dictated by time constraints in the investigation.  There is no mention of a Commerce

Department policy or practice to reject any request for an extension, no matter how brief, that is

made after the due date.

Concerning the possible use of an adverse inference, the cover letter stated that "[i]f you

*fail to respond* or *fail to provide the requested Q&V information*, please be aware that the

Department may find that you failed to cooperate by not acting to the best of your ability to

comply with the request for information, and may use an inference that is adverse to your

interests in selecting from the facts otherwise available, in accordance with section 776(b) of the

Act [19 U.S.C. § 1677e(b)]."  *Id.* (emphasis added).  This sentence is significant for what it does

*not* say: it does not inform submitters that an adverse inference will be used, or even may be

used, if a response is not received by the due date.  Instead, the cover letter discusses the use of

an adverse inference only in the context of failures to respond or provide the requested

information.  The cover letter contains no warning that any failure to meet the strict filing

deadline would result, or was likely to result, in the rejection of the separate-rate application and

the consequent subjecting of the exporter to the PRC-wide rate.

The Initiation Notice addressed the topic of the filing date for the Q&V response in two

sentences.  In one sentence, Commerce instructed that "[t]he Department requires that the

respondents submit a response to both the quantity and value questionnaire and the separate-rate

application by the respective deadlines, as discussed below and in the Separate Rate section, in

order to receive consideration for separate-rate status." *Initiation Notice*, 77 Fed. Reg. at 18,210.

The other sentence specified that "[t]he quantity and value questionnaire must be submitted by

all Chinese exporters/producers no later than April 11, 2012, 21 days after the signature date of

this **Federal Register** notice." *Id.* (emphasis in original).  Unlike the cover letter, the Initiation

Notice makes no mention of extensions and on the whole can be read to take a more stringent

position than does the cover letter concerning failures to meet the filing deadline for the Q&V

response.  In this respect, the Initiation Notice and the cover letter to the Q&V questionnaire do

not take consistent approaches and thereby send a mixed message.

<u>4.  Contrary to Defendant's Arguments, the Challenged Decision Is Not Justified by
Reasonableness or by a Resort to the Department's Regulations</u>

Defendant argues that Commerce, in defendant's words, "reasonably declined to grant

Kehuaxing a separate rate because Kehuaxing failed to file a timely quantity and value response"

and "reasonably exercised its discretion when it declined to grant plaintiffs the requested

extension."  Def.'s Resp. 6.  As discussed above, the challenged decision is based on findings

that are not supported by substantial record evidence and on faulty reasoning.  In the

circumstances surrounding the compliance failure that gave rise to this case, Commerce abused

its discretion in rejecting Kehuaxing's separate-rate application and assigning Kehuaxing the

PRC-wide rate based on the use of adverse inferences, a rate designated for the non-cooperating

entity comprised of the government of China.

Defendant argues, further, that the decision contested in this case was authorized by the

Department's regulations, which, according to defendant, "expressly provide that a party may

request an extension of time provided that the party submits a written request *before* the time

limit established by Commerce expires." Def.'s Resp. 9 (citing 19 C.F.R. §§ 351.302(c),

351.301) (emphasis in original). This argument is also unconvincing. The regulation in question

applies to "any time limit established by this part," *i.e.*, Part 351 of the Code of Federal

Regulations. *See* 19 C.F.R. § 351.302(b). The time limit in question in this case is not one set

by regulation. Moreover, as the court discussed above, the regulations do not provide that the

Secretary may exclude from the record a timely-filed separate-rate application simply because a

response to a Q&V questionnaire was filed after the deadline. The regulations do provide, in

19 C.F.R. § 351.104(a)(2)(i), that "[t]he Secretary, in making any determination under this part,

will not use factual information . . . that the Secretary rejects" and further provide, in 19 C.F.R.

§ 351.104(a)(2)(iii), that "[i]n no case will the official record include any document that the

Secretary rejects as untimely filed . . . ." These provisions do not resolve the question of whether

the Secretary acted permissibly in excluding the timely-filed separate-rate application, thereby

attaching a severe consequence to a relatively minor compliance failure.

B.  Commerce Must Act Expeditiously in Complying with the Court's Remand Order

The court is requiring Commerce to file a remand redetermination within thirty days of

the date of this Opinion and Order. The court believes it is necessary to require an expedited

filing of a remand redetermination because the rate assigned to Kehuaxing affects cash deposits

that are now being collected pursuant to the Final Determination and the antidumping duty order.

Finally, the court has considered whether it would be feasible to authorize an additional

proceeding under which Kehauxing would become an individually investigated

producer/exporter according to 19 U.S.C. § 1673d, in the event Commerce would desire to

conduct such a proceeding. The court concludes, preliminarily, that the Department's

conducting a proceeding of this type would not be feasible. The court reaches this preliminary

conclusion because the antidumping duty order was issued on April 11, 2013, approximately one year ago, because cash deposits are now being collected at an unlawful rate, and because any such proceeding likely would require considerable time.  *See Drawn Stainless Steel Sinks from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order*, 78 Fed. Reg. 21,592 (Int'l Trade Admin. Apr. 11, 2013).  If Commerce disagrees with the court's preliminary conclusion on this question, it should so inform the court in the remand redetermination and address the concerns the court has expressed. In that event, the court will consider the points Commerce raises, and any comments of plaintiffs, before deciding the question and, accordingly, ordering any additional proceeding that may be appropriate.

### III. CONCLUSION AND ORDER

For the reasons discussed in the foregoing, the Commerce decision challenged in this case cannot be sustained upon judicial review because it reflected an abuse of the Department's discretion.  Therefore, upon consideration of all papers and proceedings in this case, and upon due deliberation, it is hereby

**ORDERED** that the Final Determination in *Drawn Stainless Steel Sinks From the People's Republic of China: Investigation, Final Determination*, 78 Fed. Reg. 13,019 (Int'l Trade Admin. Feb. 26, 2013), be, and hereby is, set aside with respect to the decision therein to assign to Kehauxing the PRC-wide rate based on the untimely filing of Kehuaxing's response to the quantity and value questionnaire, which decision resulted from an abuse of discretion and therefore was contrary to law; it is further

**ORDERED** that Commerce, within thirty days (30) of this Opinion and Order, shall reconsider the challenged decision and file a redetermination upon remand ("Remand Redetermination") that is in accordance with this Opinion and Order; it is further

**ORDERED** plaintiffs may comment on the Remand Redetermination within thirty (30) days of submission of the Remand Redetermination; it is further

**ORDERED** that defendant may file a response to plaintiffs' comments within fifteen (15) days of the submission of those comments; and it is further

**ORDERED** that Plaintiffs' Motion for Oral Argument (Feb. 28, 2014), ECF No. 29, be, and hereby is, denied as moot; and it is further

**ORDERED** that Commerce, as is necessary to comply with this Opinion and Order, be, and hereby is, authorized to admit to the record any previously rejected submissions.

/s/ Timothy C. Stanceu

Timothy C. Stanceu

Judge

Dated:  May 5, 2014
          New York, New York